UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| JESUP & LAMONT, INC. and | : | Case No. 10 B 14133 (AJG) |
| JESUP & LAMONT SECURITIES | : | (Confirmed Cases) |
| CORPORATION, | : | |
| | : | |
| Debtors. | : | |

---------------------------------------------------------------

| | : | |
|---|---|---|
| MATTHEW C. HARRISON, JR., | : | |
| CONFIRMATION TRUSTEE | : | |
| OF THE JESUP LIQUIDATING TRUST, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Adv. Pro. No. 12-01169 (ALG) |
| | : | |
| STEPHEN RABINOVICI and | : | |
| ALAN WEICHSELBAUM, | : | |
| | : | |
| Defendants. | : | |

---------------------------------------------------------------

MEMORANDUM DECISION DENYING MOTION
TO DISMISS ADVERSARY PROCEEDING

A P P E A R A N C E S:

WILK AUSLANDER LLP
*Counsel for Plaintiff*
   By:  Stuart M. Riback, Esq.
       Eric J. Snyder, Esq.
       Zack H. Gross, Esq.
1515 Broadway
New York, New York 10036

LOWENSTEIN SANDLER PC
*Counsel for the Defendants*
    By:  Robert C. Boneberg, Esq.
        David M. Banker, Esq.
1251 Avenue of the Americas
New York, New York 10020

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

Jesup & Lamont, Inc ("J&L") and Jesup & Lamont Securities Corporation ("JLSC," and together with J&L, the "Debtors"), filed petitions pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on July 30, 2010 and September 24, 2010, respectively. On October 21, 2010, an Official Committee of Unsecured Creditors (the "Committee") was appointed by the United States Trustee. On September 15, 2011, the Committee filed a proposed joint plan of reorganization for the Debtors and a disclosure statement, which was subsequently amended. The Court entered an order, on October 6, 2011, confirming the Amended Plan of Liquidation of the Official Committee of Unsecured Creditors (the "Plan").

Articles V and VIII of the Plan provided for the establishment of a Post-Confirmation Trust (the "Liquidating Trust") to implement the Plan.[1] A Post-Confirmation Trustee (the "Trustee") was appointed to be the "fiduciary responsible for implementing the applicable provisions of the Plan and administering the Liquidating Trust in accordance with the Plan." Art. I-B(70). Pursuant to Article VIII-B of the Plan, the Debtors transferred all of their right, title and interest in assets, including Causes of Action[2] remaining as of the effective date of the

---

[1] Article 5, entitled Means for Implementation of the Plan, provides in Section A-1 for the Establishment of the Post Confirmation Trust.

[2] The Plan defines "Causes of Action" to mean
all actions, causes of action, Claims, Chapter 5 Claims, liabilities, obligations, rights, suits, including D&O Claims, debts, damages judgments, remedies, demands setoffs, defenses, recoupment, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims that the Debtors or their Estates may hold or be entitled to assert, whether disputed or undisputed, suspected or unsuspected, foreseen or unforeseen direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, through and including the Confirmation Date.

Plan to the Liquidating Trust.[3] The beneficiaries of the Trust (the "Beneficiaries") are the holders of claims against the Debtors to be paid through distributions from the Liquidating Trust.[4] Article VIII-A of the Plan provided that the primary purpose of the Liquidating Trust was to liquidate "assets with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the [Liquidating] Trust." The assets were to be held in the Liquidating Trust "for the benefit of the Beneficiaries, subject to the Plan and the Post-Confirmation Trust Agreement." Plan, Art.VIII-B. The Plan further provided that upon the transfer of assets to the Liquidating Trust, the Debtors would have no "reversionary or further interest in or with respect to the [Liquidating Trust or its assets.]" Plan, Art. VIII-A & B.

## The Adversary Proceeding

The Trustee filed a complaint (the "Complaint") commencing this adversary proceeding on March 14, 2012 against Stephen Rabinovici, J&L's former chairman, and Alan Weichselbaum, J&L's former CEO and CFO, alleging that the Defendants breached their fiduciary duties to J&L. J&L was a publicly traded holding company and its subsidiary, JLSC,

---

Plan, Art. I-B(15).

[3] The Plan provided that "*Remaining Assets* means: (a) any Estate Assets that have not been divested or abandoned by the Debtors as of the Effective Date; (b) Causes of Action, including Chapter 5 Claims and the D&O Claims; and (c) Cash on hand." Plan, Art. I-B(79). In addition, Effective Date is defined as "the day that is the first Business Day after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect; and (b) all conditions specified in Article [X-B of the Plan] have been (i) satisfied; or (ii) waived pursuant to Article [X-C of the Plan]." Plan, Art. I-B(39).

[4] The Plan defines Beneficiaries as "Holders of Claims that are to be satisfied through post-Effective Date distributions from the Post-Confirmation Trust as provided [in the Plan]. Plan, Art. I-B(10). In addition, the Plan provided that a Holder is "an Entity holding a Claim or an Equity Interest," Plan, Art. I-B(53), and a Claim is "any claim against a Debtor as defined in section 101(5) of the Bankruptcy Code." Plan, Art. I-B(18).
    The Beneficiaries were treated as the grantors of the Liquidating Trust and "deemed owners of the Post-Confirmation Trust Assets." Plan, Art. VIII-B.

was a brokerage and investment banking firm, regulated by the Financial Industry Regulatory Authority ("FINRA"). Specifically, the Trustee alleges that the Defendants breached their fiduciary duty by failing to make or properly apply certain trust fund tax and health care payments, and that they engaged in improper intercompany transactions and inappropriate bookkeeping and artificial accounting entries concealing from regulatory agencies overseeing the securities firm that JLSC did not meet net capital requirements under Securities and Exchange Commission rules necessary to continue in business.

In addition, the Complaint alleges, Defendants caused J&L to enter into a ruinous long-term lease approximately three months before FINRA shut down JLSC. It further alleges that the Defendants caused the Debtors to make preferential payments to creditors on whose debts Defendants were liable as guarantors. Eventually, FINRA charged JLSC with being out of compliance with the net-capital rules and, on June 18, 2010, required JLSC to cease conducting new business and to wind down. The bankruptcy cases followed.

The Instant Motion

Defendants have moved to dismiss the adversary proceeding under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, arguing that the Post-Confirmation Trust cannot assert state law claims against two non-debtor individuals where, it is alleged, the Plan does not specifically provide for retention of jurisdiction, the debtors and bankruptcy estates no longer exist, and the adversary proceeding does not have a "close nexus" to the bankruptcy proceedings and is merely a vehicle for increasing distributions to a sub-group of former creditors. The Trustee responds that the claims at issue relate directly to the insolvency that led to this chapter 11 case, that a bankruptcy court retains post-confirmation jurisdiction over claims that a

liquidating trust inherited from a debtor based on pre-petition facts, where the proceeds collected from such claims will be distributed to the debtor's creditors in accordance with a chapter 11 plan, and that even if a bankruptcy court's jurisdiction narrows post-confirmation, the causes of action have a "close nexus" with the bankruptcy plan and proceedings, and the Plan adequately provided for the retention of jurisdiction by this Court.

## Rule 12(b)(1) Motion to Dismiss

A case must be dismissed under Fed. R. Civ. P. 12(b)(1), incorporated into bankruptcy practice by Fed. R. Bankr. P. 7012, when the court lacks subject matter jurisdiction over a dispute because of the absence of a constitutional or statutory basis upon which to adjudicate it. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). When challenging jurisdiction under Rule 12(b)(1), evidence outside of the pleadings, including affidavits, may be considered. *Kamen v. American Tel. & Tel. Co.*, 791, F.2d 1006, 1011 (2d Cir. 1986). The party advocating jurisdiction has the burden of proving its existence by a preponderance of the evidence. *Marakova*, 201 F.3d at 113. Here, for the reasons stated below, the Trustee has met that burden.

## Subject Matter Jurisdiction

A bankruptcy court's jurisdiction "is grounded in, and limited by, statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). 28 U.S.C. § 1334 provides the statutory basis for bankruptcy jurisdiction; pursuant to subsection (a), district courts "have original and exclusive jurisdiction of all cases under title 11," and pursuant to subsection (b), "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to

5

cases under title 11."[5]  The parties acknowledge that this Court's jurisdiction over the state law causes of action at issue is premised upon "related to" jurisdiction.

The Second Circuit applies the broad standard for "related to" jurisdiction that was initially formulated by the Third Circuit in *In re Pacor, Inc.*, 743 F.2d 984 (3d Cir. 1984). *See Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 114 (2d Cir. 1992) (other citations omitted).[6]  *Pacor* holds that a proceeding is "related to" a bankruptcy case if "*the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.*"  743 F.2d at 994 (emphasis in original).  As such, it is not necessary that the proceeding be against the debtor or its property. *Id*. *Pacor* further holds that

> [a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

743 F.2d at 994.  This comprehensive "related to" jurisdictional grant was intended to allow courts to "deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Id.*, *citing*, H.Rep No. 598, 95th Cong., 2d Sess., 43-48.

### Post-Confirmation Jurisdiction

Although the "related to" jurisdictional grant is very broad, *Boston Regional Medical Center, Inc. v. Reynolds (In re Boston Regional Medical Center, Inc.)*, 410 F.3d 100, 105 (1st Cir.

---

[5] Pursuant to 28 U.S.C. § 157(a), district courts may refer any such cases or proceedings "to the bankruptcy judges for the district."  In this district, pursuant to an Amended Standing Order of Reference, M-431 (S.D.N.Y. Jan. 31, 2011) all bankruptcy cases and proceedings "are referred to the bankruptcy judges for this district."

[6] The majority of circuits apply the expansive *Pacor* standard; however, as noted by the court in *Kirschner v. Grant Thronton LLP (In re Refco, Inc. Secs. Litig.),* 628 F. Supp.2d 432, 438 (S.D.N.Y. 2008), the Seventh Circuit applies a more restrictive standard, requiring that a dispute "affect[ ] the amount of property for distribution [*i.e.*, the debtor's estate] or the allocation of property among creditors (citing, *In re FedPak Sys., Inc.*, 80 F.3d 207, 213-14 (7th Cir. 1996).

2005), there is no question that there are limits. *Celotex*, 514 U.S. at 308. Defendants in their motion rely on the principle that bankruptcy jurisdiction shrinks post-confirmation, citing *In re General Media, Inc.*, 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005). Defendants argue that the instant adversary proceeding is merely a suit between non-debtors involving state law causes of action, that there can be no effect on the Chapter 11 estate as there is no estate and the proceedings have terminated, that there is no close nexus to the chapter 11 proceedings, and that the Plan did not adequately provide for retention of bankruptcy "related to" jurisdiction.

Defendants' contentions can be easily disposed of. From a general perspective, while the jurisdiction of a bankruptcy court may shrink, it "does not disappear entirely." *Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 165 (3d Cir. 2004); *see also*, *Neilson v. Straight-Out Promotions, LLC (In re Michael G. Tyson)*, No. 05-02210, 2007 WL 2379624 at *3 (Bankr. S.D.N.Y. Aug. 17, 2007) (noting that "jurisdiction . . . after confirmation of a plan may shrink, but it does not disappear"). Indeed, as the *Resorts* court noted, several statutory provisions and rules are premised upon the continuation of bankruptcy jurisdiction post-confirmation, including 11 U.S.C. § 1142, which authorizes the bankruptcy court to direct parties to perform acts necessary to carry out the plan, and Fed. R. Bankr. P. 3020, authorizing the court to enter orders necessary for the administration of the estate. 372 F.3d at 165. According to the *Resorts* court, the "essential inquiry" in determining post-confirmation jurisdiction is whether there is a "close nexus" to the bankruptcy plan or proceeding. *Resorts*, 372 F.3d at 167. *See also General Media,* 335 B.R. at 73-74, which similarly held that the post-confirmation matter must have a close nexus to the bankruptcy plan or proceeding.

In this case, the Post-Confirmation Trust was expressly established as the principal if not

only "means for implementation of the Plan" (Art. V).  The causes of action against the Defendants were transferred by the Debtors from their Estates to the Liquidating Trust pursuant to the Plan and the Litigation Trust Agreement.  The implementation and execution of the Plan is directly at issue as the Trustee is prosecuting the claims that were transferred pursuant to the terms of the Plan.

The First Circuit in *Boston Regional* also noted that there is a strong federal policy favoring an expeditious liquidation of corporate debtors and the prompt distribution of their assets to creditors.  410 F.3d at 107.  Consequently, the *Boston Regional* court concluded that where a debtor, or a trustee acting on behalf of a debtor,

> commences litigation designed to marshal the debtor's assets for the benefit of its creditors pursuant to a liquidating plan of reorganization, the compass of related to jurisdiction persists undiminished after plan confirmation.

*Id.* at 107.  Although sustaining post-confirmation jurisdiction on the more traditional "close nexus" analysis of *General Media* and *Resorts*, the District Court in *Refco* found the *Boston Regional* analysis "persuasive."  *Refco*, 628 F. Supp. at 442 (citing cases that also approvingly cited the First Circuit's approach);  *see also*, *Cross Media Mktg. Corp. v. CAB Mktg., Inc. (In re Cross Media Mktg. Corp.)*, 367 B.R. 435, 444 (Bankr. S.D.N.Y. 2007), where the bankruptcy court relied on the *Boston Regional* analysis, finding that post-petition bankruptcy jurisdiction did not diminish in the context of a liquidating chapter 11 plan where the debtor commenced litigation to collect assets for the benefit of creditors.

Defendants contend that all of the foregoing courts "overlooked" the decision of the Supreme Court in *Celotex v. Edwards* because they failed to address the Supreme Court's admonition in *Celotex* that "bankruptcy courts have no jurisdiction over proceedings that have

no effect on the debtor." 1514 U.S. at 308 n. 6. The Defendants contend that because the debtor-in-possession and its estate cease to exist after confirmation of a plan, there can be no effect on the debtor or its estate as required by *Celotex*. Defendants' argument has no merit. *Celotex* did not address post-confirmation jurisdiction as it was decided in the context of a viable debtor and an existing bankruptcy estate, and the Supreme Court did not use the word "estate" in a narrow or limiting sense. Indeed, although not explicitly citing *Celotex* in the section of its decision which addressed the issue of the absence of a debtor or estate, the *Resorts* court stated

> At the most literal level, it is impossible for the bankruptcy debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred.

*Resorts*, 372 F.3d at 165. The *Resorts* Court went on to note that all post-confirmation jurisdiction would be barred courts applied the "effect on the bankruptcy estate" language literally. *Id*.

The second prong of the *General Media* standard, which has also been frequently cited, is that the reorganization plan provide for retention of the causes of action at issue. Here, the causes of action against the Defendants are preserved in the Plan. The Plan provides that the Debtors and Committee conveyed the Remaining Assets, which included "Causes of Action", to the Liquidating Trust. The term "Cause of Action" was broadly defined to include, among other things, all causes of action, rights, suits or other claims that the Debtors or their Estates held or were entitled to assert based on events occurring prior to the Petition Date up until Confirmation of the Plan. The Trustee was charged with the responsibility of "implementing the applicable provisions of the Plan and administering the Liquidating Trust in accordance with the Plan."

9

(Art. I-B(7)).[7] Further, Article XIII-8 of the Plan provided that post-confirmation, the Bankruptcy Court retained jurisdiction to "decide or resolve any . . . adversary proceedings . . . and any other Causes of Action that are pending as of the Confirmation Date or that may be commenced in the future." Since the Trustee commenced this litigation to marshal the debtor's assets for the benefit of the Beneficiaries, who were holders of claims against the Debtors' Estates, the second prong set forth in *General Media* is satisfied.

The Defendants contend that more specificity was required to preserve the Causes of Action against these particular Defendants. However, the Plan specifically provided that all Causes of Action were preserved and transferred to the Liquidating Trust unless *"expressly* waived, abandoned, relinquished, released, compromised or settled in the Plan."[8] As these Causes of Action were not expressly abandoned or otherwise relinquished or released, they were adequately preserved under the terms of the Plan.

---

[7] Further supporting the Trustee's control over the Causes of Action, Article XI-E of the Plan provides that the Trustee "shall have the exclusive right and authority to institute, prosecute, abandon, settle or compromise any and all such claims, rights and Causes of Action."

[8] Article XI-E(2) of the Plan provides that claims or Causes of Action are reserved for further action by the Liquidating Trust or Committee unless *"expressly* waived, abandoned, relinquished, released, compromised or settled in the Plan" or any final order. (emphasis added). There was no express abandonment or any other type of express release with respect to the Causes of Action at issue in this adversary proceeding.

Conclusion

The motion to dismiss under Fed. R. Civ. P. 12(b)(1) is denied. Counsel for the Trustee is directed to settle an order consistent with this Memorandum of Decision on three days' notice.

Dated: New York, New York
September 4, 2012

**s/Allan L. Gropper**
UNITED STATES BANKRUPTCY JUDGE